UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK, | Case No. 3:18-cv-06777-JD |
| Plaintiff, | |
| v. | **ORDER RE MOTION TO DISMISS** |
| 574 ESCUELA, LLC, | Re: Dkt. No. 13 |
| Defendant. | |

Pro se plaintiff Peter Strojnik, a resident of Arizona, alleges that defendant's hotel, the Monte Cristo Inn B&B ("Monte Cristo") in San Francisco, California, violated his rights of equal access under the Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights Act ("Unruh"), and the California Disabled Persons Act ("DPA"). Dkt. No. 1. He also sues for negligence per se. *Id.*

Monte Cristo filed an oversize motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim under Rule 12(b)(6). Dkt. No. 7. Strojnik filed an opposition to the motion. Dkt. No. 8. The Court struck the oversize brief, Dkt. No. 12, and defendant filed a substantially similar conforming motion, Dkt. No. 13. Plaintiff did not file a response to Docket Number 13 and stands on his original opposition. Monte Cristo elected not to reply to Strojnik's opposition brief.

The Court finds the motion suitable for decision on the papers pursuant to Civil Local Rule 7-1(b). Defendant's motion to dismiss is granted in part and denied in part, and plaintiff is granted leave to amend.

### BACKGROUND

The salient facts are straightforward and undisputed for purposes of the motion to dismiss. Strojnik lives in Arizona and is disabled because of spinal stenosis and a degenerative right knee

1   condition that make it difficult for him to walk.  Dkt. No. 1 ¶¶ 3-4.  He also suffers from prostate

2   and renal cancers.  *Id.*  Defendant owns the Monte Cristo hotel in San Francisco.  *Id.* ¶ 5.

3       Strojnik says that he intended to visit San Francisco, without specifying a time or purpose.

4   *Id.* ¶ 15.  He looked at hotel booking websites that described the Monte Carlo.  *Id.* ¶ 16.  Strojnik

5   was unable to determine through these third-party sites, or defendant's own reservation website,

6   whether the Monte Carlo met his accessibility needs.  *Id.* ¶¶ 17-22.

7       Strojnik did not travel to San Francisco.  *Id.* ¶ 25.  He claims that he was "deterred from

8   visiting the Hotel based on [his] knowledge that the Hotel is not ADA or State Law compliant,"

9   but that he "intends to visit Defendant's Hotel at a specific time when the Defendant's

10  noncompliant Hotel becomes fully compliant."  *Id.* ¶¶ 11-12.

## DISCUSSION

### I.    LEGAL STANDARDS

13      Well-established standards govern the motions.  "A Rule 12(b)(1) jurisdictional attack may

14  be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a

15  complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual

16  attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

17  invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

18  (citations omitted).  Defendant raises a facial jurisdictional challenge, so the Court takes all factual

19  allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor.  *Pride*

20  *v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

21      Federal courts are courts of limited jurisdiction, and the "case or controversy" requirement

22  of Article III of the U.S. Constitution "limits federal courts' subject matter jurisdiction by

23  requiring, inter alia, that plaintiffs have standing."  *Chandler v. State Farm Mut. Auto. Ins.*, 598

24  F.3d 1115, 1121 (9th Cir. 2010).  A plaintiff must demonstrate standing to sue by alleging the

25  "irreducible constitutional minimum" of (1) an "injury in fact" (2) that is "fairly traceable to the

26  challenged conduct of the defendants" and (3) "likely to be redressed by a favorable decision."

27  *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The specific element of injury in fact is satisfied

28  when the plaintiff has "suffered 'an invasion of a legally protected interest' that is 'concrete and

United States District Court
Northern District of California

1    particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id* at 1548 (quoting

2    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

3         "Article III standing must be measured claim by claim." *Razuki v. Nationstar Mortg.,*

4    *LLC*, Case No. 18-cv-03343-JD, 2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020) (citations

5    omitted).  The relevant standing analysis here is under the ADA, the sole federal claim.  Damages

6    are not available, so Strojnik is limited to injunctive relief.[1]  *Pickern v. Holiday Quality Foods*

7    *Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)).  This means that Strojnik,

8    "must not only demonstrate the familiar requirements for standing -- injury-in-fact, traceability,

9    redressability -- but also a sufficient likelihood that he will be wronged in a similar way." *Ervine*

10   *v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) (internal

11   quotation and citation omitted).  The plaintiff must allege "continuing, present adverse effects,"

12   and "past exposure to illegal conduct does not in itself show a present case or controversy." *City*

13   *of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

14        An ADA plaintiff meets these standards if "he intends to return to a noncompliant place of

15   public accommodation where he will likely suffer repeated injury." *Chapman v. Pier 1 Imports*

16   *(U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (en banc).  Alternatively, "when a plaintiff who is

17   disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public

18   accommodation to which he or she desires access . . . and remains deterred, the injury under the

19   ADA continues." *Pickern*, 293 F.3d at 1135-37.

20        At the motion to dismiss stage, Article III standing is adequately demonstrated through

21   allegations of "specific facts plausibly explaining" why the standing requirements are met.

22   *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).

23        To survive a Rule 12(b)(6) motion, a plaintiff must also meet a plausibility standard. *Bell*

24   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This one calls for enough "factual content that

25   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

26

27   ───────────────
     [1] Strojnik's prayer for costs cannot "confer Article III jurisdiction," and he has not alleged "unique

28   circumstances" that would justify the award of nominal damages.  *Bayer v. Neiman Marcus Grp.*,
     861 F.3d 853, 866-67, 874 (9th Cir. 2017).

1   alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The

2   plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to

3   draw on its judicial experience and common sense." *Id.* at 679.

4   **II.     ADA**

5          Strojnik has been a pro se plaintiff in "thousands of disability discrimination cases against

6   hotel defendants in state and federal courts." *Strojnik v. Bakersfield Convention Hotel I, LLC*,

7   ___ F. Supp. 3d ___, 2020 WL 509156, at *1 (E.D. Cal. 2020). He is, or was, an attorney licensed

8   to practice in Arizona, and appears to have been the subject of a State Bar of Arizona conduct

9   investigation with respect to these lawsuits. *Strojnik v. Kapalua Land Co.*, 379 F. Supp. 3d 1078,

10  1080 (D. Haw. 2019). This case follows the pattern of Strojnik's other lawsuits, where he alleges

11  ADA claims against a hotel that he has never visited and expresses only the vaguest of intentions

12  of ever doing so. *See, e.g.*, *id.*

13         A good argument can be made that Strojnik has not alleged facts sufficient to demonstrate

14  a concrete and particularized injury in fact for standing purposes. As in his other cases, Strojnik's

15  "knowledge" that the Monte Carlo is not ADA or state law compliant comes entirely from his

16  review of websites. He never actually visited the hotel.

17         Strojnik's contacts with San Francisco are equally thin. He is a resident of Arizona, and

18  the record before the Court indicates that Strojnik has never been to San Francisco, has no

19  particular reason to visit, and in fact may never come to San Francisco. Strojnik filed a

20  declaration stating that "[o]ver the last 40 years or so [he] has regularly submitted himself to the

21  territorial jurisdiction of the State of California by traveling there for business and pleasure. . . . He

22  has also been subjected to the territorial jurisdiction by being subjected to at least three traffic

23  tickets there." Dkt. No. 8, Ex. 1 at ECF p.11. At most, these averments show merely a chance,

24  but hardly a likelihood, that Strojnik will ever travel to San Francisco. *See Summers v. Earth

25  Island Inst.*, 555 U.S. 488, 495 (2009).

26         Strojnik's suggestion that he "intends to visit Defendant's Hotel at a specific time when the

27  Hotel becomes fully compliant" does not add any element of concreteness. Dkt. No. 1 ¶ 12. The

28  Supreme Court largely held as much in *Lujan*, when it determined that environmental groups

United States District Court
Northern District of California

could not demonstrate standing to challenge a regulation based on their members' general intent to travel to affected areas across the globe. "Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564.

That fully applies here. Strojnik's reference to "a specific time" when he intends to use the Monte Cristo hotel is anything but specific about that time. He also does not allege any specific plan or reason for a visit, such as a professional or social event, or an invitation, that would render his expression of intent anything but hypothetical. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993-94 (9th Cir. 2012).

In addition, the complaint is devoid of other factual allegations that have established standing in the ADA context in previous cases. An ADA plaintiff can demonstrate a cognizable injury by showing an intent "to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier" or "when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Chapman*, 631 F.3d at 950. In *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040-41 (9th Cir. 2008), the plaintiff was found to have suffered an actual or imminent injury sufficient to challenge barriers at a store 550 miles from his home because he "alleged that he had visited the 7-Eleven store on ten to twenty prior occasions, that he is currently deterred from visiting the store because of its accessibility barriers, that the store is conveniently located near his favorite fast food restaurant in Anaheim, [] that he plans to visit Anaheim at least once a year on his annual trips to Disney," and that he planned to return once those barriers were removed. The same plaintiff also had standing to sue a grocery store 70 miles from his home in *Pickern v. Holiday Quality Foods Inc.* because he submitted a declaration that Holiday was his favorite grocery chain and but for the barriers to access he would frequent the store at issue while visiting his grandmother on a near weekly basis. 293 F.3d at 1135, 1138. No similar allegations are made in Strojnik's complaint or motion papers.

Even so, Strojnik says the Ninth Circuit's decision in *Civil Rights Education & Enforcement Center v. Hospitality Properties Trust* (*CREEC*), 867 F.3d 1093 (9th Cir. 2017), saves his case. *CREEC* found that testers for a civil rights group had standing to sue a real estate

United States District Court
Northern District of California

investment trust based on allegations its hotels did not provide shuttle services for mobility-impaired people. In response to a challenge to the plaintiffs' Article III standing, *CREEC* held in pertinent part:

> The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, 'construing the factual allegations in the complaint in favor of the plaintiffs,' as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. Their harm is 'concrete and particularized,' and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm 'actual or imminent, not conjectural or hypothetical.' *Lujan*, 504 U.S. at 560.

*CREEC*, 867 F.3d at 1099.

Although the court cited *Lujan*, it is not readily apparent how these allegations are meaningfully different from the "some day" travel plans the Supreme Court found to be insufficient for standing in that case. The same tension is evident with the holding in *Summers*, where the Supreme Court concluded that a statement by a member of an environmental group that he "want[s] to" go to a certain location was insufficient to "satisfy the requirement of imminent injury." 555 U.S. at 496.

The Ninth Circuit has also interpreted *Lujan* in ways arguably inconsistent with *CREEC*. In *Bain v. California Teachers Association*, 891 F.3d 1206, 1214 (9th Cir. 2018), the circuit rejected the standing of a disassociated member of a union on the basis of an "assertion that [she] could *conceivably* return to her old job, without more," finding that it was "precisely the type of speculative 'some day' intention the Supreme Court has rejected as insufficient to confer standing" in *Lujan*. In *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015), the plaintiff's standing to challenge new government hostage response policies in the Middle East was denied because he alleged "no concrete plans to return, only an abstract 'wish[]' to do so." This decision predates *CREEC* but shows the continuity of the circuit's holdings in this area.

United States District Court
Northern District of California

In contrast, *Montana Shooting Sports Association*, which was quoted by *CREEC* in the passage above, denied dismissal because of "specific allegations substantiating [plaintiff's] claim" that federal regulations would impact his manufacture and sale of firearms. 727 F.3d at 980. Those allegations were: "He has a background in running his own shooting range equipment manufacturing business, has identified suppliers for the component parts . . . , has design plans for the firearm ready to load into manufacturing equipment, and has identified hundreds of customers who have ordered . . . at his asking price." *Id.* This is illustrative of the degree of concreteness and particularity standing typically requires.

The Court also notes that *CREEC*'s test for standing appears to be in tension with ADA cases like *Pickern* and *Doran*, which go to some length to confirm that the plaintiff had documented habits of visiting locations 70 and 550 miles from his home, to see his grandmother and for annual trips to Disneyland, respectively. Strojnik offers nothing like that in the complaint. *See also D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) ("In order to show the actual and imminent nature of her injury, then, D'Lil must demonstrate her intent to return to the Santa Barbara area and, upon her return, her desire to stay at the Best Western Encina if it is made accessible.").

Nevertheless, *CREEC* governs the standing challenge here, and requires that the question be answered in Strojnik's favor. *See Head v. Wilkie*, 936 F.3d 1007, 1008 (9th Cir. 2019) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). Strojnik has alleged that he intends to visit the Monte Carlo, but that he has been deterred from doing so because of its noncompliance with the ADA. He further alleges that he intends to go to the hotel when it becomes compliant. Dkt. No. 1 ¶ 11-12. These are the same "averments" that "sufficiently alleged injury in fact" in *CREEC*, and so they must be accepted here. 867 F.3d at 1099.

Review of Strojnik's ADA claim under Rule 12(b)(6) is straightforward. ADA regulations require "places of lodging" to "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1)(ii); *see Fortyune v. Am. Multi-Cinema, Inc.*, 364

1    F.3d 1075, 1084 (9th Cir. 2004) (public accommodations responsible for "ADA and its

2    implementing regulations").  Strojnik alleges that he reviewed the Monte Carlo's reservation

3    website and that it failed to meet the requirements of 28 C.F.R. § 36.302(e)(1)(ii).  Dkt. No. 1 ¶

4    19.  That is enough to survive under Rule 12(b)(6).

5    ### III.    STATE LAW CLAIMS

6    #### A.    Unruh Act

7           The Unruh Act claim is dismissed for failure to state a claim.  California's civil rights act

8    is limited to "persons within the jurisdiction of this state."  Cal. Civ. Code § 51(b).  The complaint

9    does not claim that Strojnik was in California when he viewed the reservation websites at issue.

10   In fact, Strojnik alleges that he is a resident of Arizona and that he did not travel to San Francisco.

11   Dkt. No. 1 ¶¶ 1, 25.

12          Strojnik's opposition emphasizes "exposing himself to the territorial jurisdiction of

13   California" in support of his Unruh Act claim.  Dkt. No. 8 at 7.  But this concept is never defined,

14   nor does it appear to be relevant to review of his Unruh Act claim.  The California Supreme Court

15   has interpreted the phrase "within the jurisdiction of this state" in accord with its plain meaning as

16   "within the state."  *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668 n.4 (2009); 1959 Cal. Stat.

17   4424.  Since Strojnik has not alleged he was in California when his claim arose, the cause of

18   action under the Unruh Act is not plausible.

19   #### B.    Disabled Persons Act

20          The focus of the DPA is "[m]ore narrow . . . than the Unruh Civil Rights Act, [and] it

21   generally guarantees people with disabilities equal rights of access to 'to public places, buildings,

22   facilities and services, as well as common carriers, housing and places of public accommodation."

23   *Jankey v. Lee*, 55 Cal. 4th 1038, 1044-45 (2012) (quoting *Munson*, 46 Cal. 4th at 674 n.8).

24   However, California "amended the Disabled Persons Act to incorporate ADA violations and make

25   them a basis for relief under the act."  *Id*. at 1045 (citing Cal. Civ. Code §§ 54(c), 54.1(d)).

26          Since Strojnik has plausibly alleged a violation of the ADA, and the DPA does not contain

27   the same "within the jurisdiction of this state" language as the Unruh Act, or its equivalent, Monte

28   Carlo's motion to dismiss the DPA claim is denied.

United States District Court
Northern District of California

8

## C. Negligence

Strojnik has adequately alleged a claim for negligence per se.  There are four elements:  (1) violation of a public statute or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence of the sort which the statute or regulation was designed to prevent; and (4) the person suffering the injury was one of the class of persons for whose protection the law or regulation was adopted.  Cal. Evid. Code § 669; *see Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126-27 (9th Cir. 2017) (recognizing negligence per se).  Strojnik has plausibly alleged that the hotel violated a regulation that itself results in violations of federal and state law; that he was injured by this violation due to "the feeling of segregation, discrimination, [and] relegation to second class citizen status," Dkt. No. 1 ¶ 62; that the ADA and DPA were designed to protect disabled persons, *id.* ¶¶ 43, 58, 64; and that he is disabled, *id.* ¶¶ 2-3.

## CONCLUSION

The motion is granted and denied in part.  Plaintiff's ADA, DPA, and negligence per se claims will go forward.  Since the Court cannot say that any amendment would necessarily be futile and leave to amend "when justice so requires" is to be granted with "extreme liberality," Strojnik may amend his complaint by May 1, 2020.  *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (citations omitted).  No new claims or parties may be added without the Court's prior approval.

If this deadline is not feasible in light of the public health situation, the parties may agree on a new date by stipulation.  If the parties cannot agree, a party may ask the Court to extend the deadline.  Failure to respond to this order by May 1, 2020, will result in dismissal of Strojnik's Unruh Act claim with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated:  March 31, 2020

_____

JAMES DONATO
United States District Judge

United States District Court
Northern District of California

9