Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK,<br><br>                              Plaintiff,<br><br>vs.<br><br>R.F. WEICHERT V, INC. dba<br>JABBERWOCK INN<br><br>                              Defendant. | Case No: 5:20-cv-00354-VKD<br><br>**NOTICE OF FILING SECOND AMENDED COMPLAINT**<br><br>**with**<br><br>**EXPLANATORY NOTES** |

This Second Amended Complaint is brought pursuant to the Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File Supplemental Complaint [42]. In it, the Court grants Plaintiff the right to assert the ADA claim, however, with the following caution:

> In so ruling, however, the Court emphasizes that it is allowing Mr. Strojnik to proceed with the portion of his SAC concerning alleged physical barriers at the Inn *solely* because the allegations appearing in his chart (Dkt. No. 39 ¶ 21) indicate that he in fact *requires* a wheelchair for mobility, that he *used* one during his visit to the Inn, and therefore was denied full and equal access to the Inn. If those allegations are true, Mr. Strojnik may proceed with his proposed SAC, subject to his obligations under Rule 11, as directed below. However, if those allegations are untrue, or if Mr. Strojnik believes the Court has misinterpreted his allegations, he may not proceed with his proposed SAC.

The Court's admonition regarding the "requirement" and "use" of a wheelchair received in the context Plaintiff's "disability" as defined by the 2008 ADAAA and 28 C.F.R. 36.105. Under those definitions, a "wheelchair" is *required* to be used in two specific circumstances:

1. When the ADA impairment is viewed in its "unmitigated" state, as it must be, even where the *use* of a wheelchair is *not* required in the "mitigated" state; and
2. Where an episodic "impairment" is not active but would require the use of a wheelchair when active.

In further clarification of the Second Amended Complaint, Plaintiff offers the following

### MEMORANDUM

The words and phrases in the Second Amended Complaint are meant to reflect legal, not vernacular definitions. This is particularly true with respect to definitions of the terms such as "disability," "impairment," "ameliorative effects," "mitigating measures", "episodic," "remissive," "wheelchair" and other terms. The adoption of legal versus vernacular understanding of these terms is adopted because the question of "standing" is determined with reference to the legal and not vernacular definitions.

**1. CONGRESS' DEFINITION OF "DISABILITY."**

In the 2008 ADAAA, Congress *specifically* rejected ADA Defense Bar's and their clients' interpretation of "disability". Congress specifically critiqued Supreme Court's equally false interpretation in *Sutton v. United Air Lines, Inc*., 527 U.S. 471 (1999), *id.* at ¶2(b)(2), and Supreme Court's faulty interpretation of disability *in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002), *id.* at ¶¶2(b)(4)(5).

Instead, Congress adopted an easy to read and understand definition of "disability" as follows:

> SEC. 3. DEFINITION OF DISABILITY.
> As used in this Act:
>
> (1) DISABILITY.—The term 'disability' means, with respect to an individual—
>
>   (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>   (B) a record of such an impairment; or
>
>   (C) being regarded as having such an impairment.

2

It is immediately apparent that the term "wheelchair" argued by the ADA Defense Bar as the tell all definition of "disability" appears nowhere in the definition. The reason for Congress' rejection of the "wheelchair" standard is set forth in ¶4, where Congress declared:

> "(4) RULES OF CONSTRUCTION REGARDING THE DEFINITION OFDISABILITY.—The definition of 'disability' in paragraph (1) shall be construed in accordance with the following:
>
> "(A) The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.
>
> "(B) The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.
>
> "(C) …
>
> "(D) **An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active**.
>
> "(E)(i) **The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as—**
>
> **"(I) …prosthetics**…;

Whether an "impairment" substantially limits a major life activity *shall be made without regard to ameliorative measures such as…prosthetics. Rohr v. Salt River Project Agricultural Improvement and Power District,* 555 F.3d 850, (9th Cir. 02/13/2009) (Impairments must be evaluated in their unmitigated state.) *Accord J.D. v. Colonial Williamsburg Foundation,* 18-1725 (4th Cir. 2019) (same - citing to *Rohr*). So an "impairment" has to be considered in its *unmitigated* state. In the case of the Plaintiff, the loss of the right knee *ameliorated* with a prosthesis must be considered, in determining whether Plaintiff has standing, as if Plaintiff is missing a knee but the knee has not been replaced with a prosthesis. 2008 ADAAA at (4)(E)(i)(I); *Rohr.*

**2. THE SIX MILLION DOLLAR MAN CONUNDRUM**

Was the Six Million Dollar Man[1] who was able to run 60 miles per hour by virtue of prosthetics and other "mitigating measures" "disabled" under the ADA? The answer is counterintuitive because the observer has difficulty viewing the Six Million Dollar Man's impairments in their *unmitigated* state. But the only possible reading of the 2008 ADAAA discloses that he was in fact ADA disabled because without the ameliorative effects of mitigating measures, he was forever bound to a wheelchair.

The Six Million Dollar Man conundrum arises in the context of standing: would the Six Million Dollar man have standing to assert an ADA claim even as the ameliorative effects of mitigating measures do not, in fact, "substantially limit" his major life activities?

Obviously, if the answer to this question is "no," then the Congressional definition of "disability" to include persons with "mitigating measures" becomes irrelevant verbiage. It is only in the context of "standing" that the definition of disability in "unmitigated" state becomes an issue. There is a strong presumption that Congress does not pass irrelevant verbiage.

Second, Congress, the Courts and general polity have no difficulty changing real persons into fictional characters for the purpose of standing, e.g., considering a person with "XY" chromosomes to be a woman and letting such person claim gender discrimination.

**3. THE FALLACY OF TEMPORAL DISORIENTATION**

The concept of *episodic* impairment is equally misunderstood by the ADA Defense Bar. Under the legislation, it does not matter whether an episodic impairment is active at the time of the encounter with a barrier, but whether the episodic impairment may flare up upon a visit to a non-compliant public accommodation. Hence "an

---

[1] From 1970's TV Series by same name. The main character, Steve Austin, was seriously injured when his spaceship crashed. Austin underwent a government-sanctioned surgery, which rebuilt several of Steve's body parts with prosthetics. When Steve recovered, his prosthetics enabled him to have superhuman strength and speed, as well as other powers.

impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."

The concepts of "intent to return" and "deterrence" are temporal concepts. An ADA plaintiff has standing not because he "encountered" a barrier; but because he is *aware* of the barrier and is *deterred* from visiting a public accommodation because he *would encounter* a known barrier *if he returned*. Civil Rights Education & Enforcement Center v. Hospitality Properties Trust, 867 F.3d 1093 (9th Cir. 2017).

So, whether Plaintiff "used" the wheelchair at the time he personally encountered the barriers is irrelevant to the question whether he is deterred from returning at a time when he would have to use the wheelchair.

## CONCLUSION

Plaintiff's Second Amended Complaint is filed with the above understanding.

DATED this 9th day of November, 2021.

**PETER STROJNIK**

_____
Plaintiff

The original ECF filed this 9th day of November 2021 thence distributed by PACER.