1   Philip H. Stillman, Esq. SBN# 152861
    STILLMAN & ASSOCIATES
2   3015 North Bay Road, Suite B
    Miami Beach, Florida 33140
3   Tel. and Fax:  (888) 235-4279
    pstillman@stillmanassociates.com
4
    Attorneys for defendant R.F. WEICHERT V, INC.
5

6              UNITED STATES DISTRICT COURT FOR THE

7                NORTHERN DISTRICT OF CALIFORNIA

8                                      Case No. 5:20-cv-00354-VKD
    PETER STROJNIK,
9                                  )
                       Plaintiff,  )   **REPLY IN SUPPORT OF MOTION TO**
10          vs.                    )   **REQUIRE PLAINTIFF TO POST A**
                                   )   **COSTS BOND**
11                                 )
    R.F. WEICHERT V, INC. dba      )   Date:  December 21, 2021
12  JABBERWOCK INN,                )   Time: 10 a.m.
                                   )   Courtroom: 2, 5th Fl.
13                     Defendant.  )
                                   )
14                                     Hon. Virginia K. DeMarchi

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

As of this filing, four courts have required Strojnik to post a bond after growing weary of his chicanery, including *Strojnik v. Woodside Hotel Grp.*, No. 20-cv-03204-BLF, 2021 U.S. Dist. LEXIS 24880 (N.D. Cal. Feb. 9, 2021) (imposing a $20,000 bond), *Strojnik v. Kamla Hotels, Inc.*, No. 19-cv-02212-AJB-AHG, 2021 U.S. Dist. LEXIS 144148 (S.D. Cal. July 30, 2021) (imposing a $20,000 bond), *Strojnik v. Driftwood Hosp. Mgmt. LLC*, 2021 WL 50456, at *11 (D. Ariz. Jan. 6, 2021) (finding Strojnik to be a vexatious litigant, imposing a $10,000 on any ADA claim filed in federal court or removed from state court), and citing *Strojnik v. Sashi Goup, LLC*, Santa Clara Superior Court Case No. 20CV367614 (finding Strojnik a state court vexatious litigant and imposing a $50,000 bond). In addition to the foregoing, Strojnik has a string of unsatisfied sanctions awards and judgments, and almost $100,000 in attorney's fee awards, including a $21,995 judgment that is a lien on this very case. *See* judgments and liens attached to the Stillman Decl. as <u>Exhibit 5.</u>

As discussed in the Motion, the normal guardrails of litigation, such as Rule 11 admonishments, sanctions, judgments and even disbarment — have had <u>zero</u> effect on Strojnik. The only way to curb Strojnik's frivolous lawsuits and his willingness to say anything in his complaints, unbound by Rule 11, is through the imposition of a costs bond. That serves the exact purpose for which Code Civ. P. § 1030 was enacted – to protect a prevailing defendant's ability to collect costs, including reasonable attorney's fees, against an out-of-state plaintiff. And in this case, as is not even disputed by Strojnik, he claims to have nothing in his name, no property, a string of unsatisfied judgments in Arizona and now four attorney's fee awards in California that remain unpaid. He has a contempt hearing on December 13, 2021 for failing to pay $11,400 in sanctions in *Kamla Hotels* and a pending contempt proceeding in *Strojnik v Village 1107 Coronado, Inc.* Thus, this is a classic case for requiring a bond. This Court should therefore require Strojnik to post a bond in the amount of $75,000 as set forth in the Declaration of Philip H. Stillman filed and stay this case until a ruling on this motion, since Defendant should not have to incur the additional expenses of yet another Motion to Dismiss until this Court resolves this Motion

# ARGUMENT

## I.

## STROJNIK SHOULD BE REQUIRED TO POST A BOND IN THIS CASE

Strojnik's Opposition is no opposition at all.  His only apparent arguments are (1) that Mr. Stillman is being paid a flat rate fee for defending this case and therefore no bond should be required, (2) a collusive lien to his so-called ex-wife Tanya Strojnik, with whom he has lived both before and after his purported 2013 "divorce" precludes him from paying any bond, and (3) he therefore has no money to post a bond.

A.    Strojnik's "Flat Rate" Argument Is Meritless.

Strojnik contends that because a hotel trade group, California Hotel & Lodging Association, offers members a special flat rate for defense of ADA litigation, that means that this Court should not impose a costs bond.  First, other than to submit a flyer, Strojnik presents nothing to show that this Defendant is either a member of CHLA or has a flat rate fee agreement.  But more important, the fee arrangements between attorney and client are irrelevant to the either the posting of a bond or the amount of a bond. "It is well-settled that an award of attorneys fees [under EAJA] is not necessarily contingent upon an obligation to pay counsel . . . ." *Id.* (brackets in original). Strojnik's exact argument was rejected in *Village 1107 Coronado*.  In addition, the actual fee arrangements between client and counsel are irrelevant to the award of fees.  *Id.*

> The United States Supreme Court clarified long ago that the award of attorneys' fees under civil rights fee-shifting statutes is not cost-based, and that the award of prevailing market rates -- regardless whether the claimant is represented by private counsel or a non-profit legal services organization -- should not be viewed as an unjustified "windfall" profit to the attorney. *See Blum v. Stenson*, 465 U.S. 886, 892-95, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); *Hensley*, 461 U.S. at 433 n.7 (standards applicable to § 1988 awards "are generally applicable in all cases where Congress has authorized an award of fees to a 'prevailing party'").

*Nadarajah*, 569 F.3d at 916.  *Nadarajah* is particularly instructive, in that the ACLU attorney stated in his declaration that the ACLU was representing the client for *nothing* and the fee agreement with the client provided that the client would assign any fees awarded to the ACLU. "The ACLU's representation of Nadarajah at no charge, pursuant to the retainer

agreement, does not preclude awarding reasonable attorneys' fees under EAJA, including the requested prevailing market rates." *Id.*

B.    Strojnik Has The Ability To Pay A Bond.

Aas discussed above, four courts have already held that a bond was appropriate. However, evidence presented in *Strojnik v. Vill. 1107 Coronado, Inc.*, No. 19-cv-02210-BAS-MSB, 2021 U.S. Dist. LEXIS 112456 (S.D. Cal. June 15, 2021) concerning his ability to pay court-ordered attorney's fees is both undisputed and dispositive.  In *Village 1107 Coronado, Inc.*, Judge Bashant entered an Order requiring Strojnik to produce all bank records into which Strojnik deposited money from his ADA settlements. *Village 1107 Coronado*, ECF No. 38. In response, Strojnik produced records from September 2018 through April 2021 on May 4, 2021, at ECF No. 40 for "Lunar Eclipse I, LLC."  Those bank records submitted in the evidentiary hearing are attached to the Stillman Decl. as Exhibits 4-7.  The analysis of the deposits and withdrawals in those bank records is attached to the Stillman Decl. as Exhibit 19.  According to Strojnik, he is the sole owner of Lunar Eclipse I, LLC.  Transcript, 23:1-4.  He created Lunar Eclipse I to take in settlement proceeds from his ADA lawsuits and pay people from that account. Transcript., 5:24-6:4, 6:23-7:3.  All of the settlements that he received were only deposited into that Lunar Eclipse I account.  Transcript., 6:12-15.

The Lunar Eclipse I bank records show the following:

1.    From September 2018 through March 2021, Strojnik deposited ***$1,777,845.20***.

2.    From those funds, he transferred $312,065.17 to a Chase Money Market Account ending in 5856.  Strojnik testified that the account was owned by his "ex" wife, Tanya Strojnik.  Transcript, 17:25-18:3.

3.    From the Lunar Eclipse funds, Strojnik transferred $136,744.06 to a purported "assistant" whose address he couldn't recall. Transcript, 18:4-13.

4.    Strojnik transferred $10,900 to his personal account at Navy Federal.  Exhibit 19, and Lunar Eclipse bank statements, Exhibit 4.

5.    Strojnik transferred an additional $8,000 in wire transfers that are unidentified.

1        Exhibit 19.

2    In addition to the foregoing amounts, Strojnik testified that he used the Lunar Eclipse I

3    account to pay (1) litigation expenses, (2) travel, (3) utilities on the house that he shared

4    with Tanya Strojnik prior to the "divorce," and where he continues to reside with her after

5    their purported "divorce" in 2013, and (4) car payments and other expenses. Transcript,

6    38:6-40:5.

7        Thus, it is clear that Strojnik has access to funds when he wants, and feign poverty

8    when it suits him.  Said Judge Bashant: "I think it's highly likely that this divorce is a sham

9    to shield his income and to allow him to pick and choose what bills he wants to pay and

10   what he chooses not to pay." Transcript, 54:5-13.  Nowhere in his response does Strojnik

11   dispute any of the foregoing or explain what he did with those funds. Clearly, at least

12   $312,000 were sheltered with Tanya Strojnik, who Strojnik claims has the ability to

13   withdraw funds from the Lunar Eclipse account when she so desires because of her "lien."

14   Transcript, 20:6-20.

15       Moreover, Strojnik clearly has money somewhere.  On July 30, 2021, he paid a $250

16   sanction.  In his Second Amended Complaint filed in this case on Nov. 9, 2021, Strojnik

17   alleged that he intended to visit Defendant's Hotel "as the interim location to California's

18   Wine Country based on the *diminishing number of California wine stock at Plaintiff's*

19   *residence* which is reaching a critical stage because of current travel restrictions."  Second

20   Amended Complaint, ¶ 13(j).  In other words, Strojnik is continuing to sue *this* hotel by

21   claiming that he intends to stay at the hotel on his trip to "California Wine Country" to

22   stock up on his critically diminishing wine collection.  How he can travel to "California's

23   Wine Country," stay in at least two hotels and purchase sufficient wine to replenish his

24   "diminishing" wine cellar at the $1.6 million house, *see* Exhibit 12, that he transferred with

25   no consideration to Tanya Strojnik and where he and Tanya Strojnik continue to live with

26   no money in any accounts is left unexplained.  Accordingly, the undisputed record is

27   sufficient to support a finding that Strojnik has the ability to post a bond.

28   C.    The Purported "Lien" Is Merely A Sham As Held In *Village 1107 Coronado.*

As he did in *Strojnik v. Vill. 1107 Coronado, Inc.*, No. 19-cv-02210-BAS-MSB, 2021 U.S. Dist. LEXIS 112456 (S.D. Cal. June 15, 2021), Strojnik claims that he cannot pay anything ordered by the Court because his purported ex-wife, Tanya Strojnik has a consensual lien from their marital settlement agreement on all of Strojnik's income and assets. On June 14, 2021 Judge Bashant held an evidentiary hearing on Strojnik's ability to pay the existing $21,995 in attorney's fees ordered by the Court. *See Strojnik v. Vill. 1107 Coronado, Inc.*, No. 19-cv-02210-BAS-MSB, 2021 U.S. Dist. LEXIS 112456, at *3 (S.D. Cal. June 15, 2021). A true and correct copy of the Transcript of the Evidentiary Hearing is attached to the Stillman Declaration as <u>Exhibit 22.</u> In that hearing Judge Bashant found:

> To the extent Mr. Strojnik has testified that he didn't pay it because he has no money, I find him to be not credible. First of all, I think it's highly likely that this divorce is a sham to shield his income and to allow him to pick and choose what bills he wants to pay and what he chooses not to pay. He lives with his ex-wife, he travels with his ex-wife, and it's clear to me from the exhibits that have been admitted that Mr. Strojnik has the ability to pay this amount and has failed to do so.

June 14, 2021 Evidentiary Hearing Transcript ("Transcript"), 54:5-13. Judge Bashant also ordered Strojnik to pay $43,246, which he failed to do. *Id*. So that this Court has a full and complete record of the proceedings before Judge Bashant, attached to the Stillman Declaration as Exhibits 1-21 are the received exhibits from the Evidentiary Hearing. The record of the exhibits received is attached to the Stillman Decl. as <u>Exhibit 23.</u>

As Judge Bashant found after the evidentiary hearing, the alleged "lien" it is likely a sham. First, Strojnik admits that he lives in the same house with Tanya Strojnik that they occupied prior to the purported divorce in 2013. Transcript, 39:18-40:5. He travels with Tanya Strojnik 75-80% of the time, also funded by Lunar Eclipse I. Transcript, 40:14-21. He pays for utilities for their shared residence from Lunar Eclipse. Despite not having any money, he claims that he is obligated to pay Tanya Strojnik pursuant to their collusive marital settlement agreement $32,489 *per month*. Transcript, 40:25-41:5. Strojnik also admits that he uses the funds in the Lunar Eclipse account to not only pay Tanya Strojnik but also to continue to fund his persecution of hotels. Transcript, 47:22-48:2. He also contends that Tanya Strojnik controls how he spends the funds from Lunar Eclipse.

Transcript, 44:2-10.  However, although she supposedly approved his expenditures of more than $136,000 in expenses to an alleged assistant whose address Strojnik does not know and transferred over $312,065 to herself,  Strojnik never asked her to approve his satisfaction of Judge Bashant's $21,995 attorney's fee order.  Transcript, 45:10-13. However, despite all of his claims regarding his inability to pay sanctions from because of Tanya Strojnik's bogus lien, his own actions demonstrate the falsity of that claim.  When ordered to do so by another court, Strojnik timely paid a $250 sanction on July 30, 2021 in *Strojnik v. Sacramento Hotel, LLC*, Case No. 2:19-cv-02041-TLN-CKD (E.D.Cal. Jul. 30, 2021).  A copy of that Notice of Payment of Sanctions is attached to the Stillman Declaration as Exhibit 24.  Strojnik's payment of sanctions when he wants to and hiding behind the sham "lien" when he doesn't shows that Strojnik simply refuses to pay sanctions when it is inconvenient for him, such as paying fees to Mr. Stillman, but perfectly able to pay litigation expenses and travel expenses for his litigation scheme (and of course, re-stocking his wine cellar to supplement his diminishing collection of California wines by traveling to a hotel that he has sued).

D.    Failure To Produce Documentation Of Donations.

Two courts have ordered Strojnik to produce "documentation reflecting any donations made by Plaintiff of any settlement funds received from this or any other litigation filed by Plaintiff,"    In *Strojnik v. IA Lodging Napa First LLC*, No. 19-CV-03983-DMR, 2020 U.S. Dist. LEXIS 95738 at *11 (N.D. Cal. June 1, 2020), Strojnik claimed that he had "donated" a total of $1.2 million to an unnamed charity.  In *Village 1107 Coronado*, he was ordered to produce evidence of those donations.  He did not.  He then claimed to have produced that evidence "*in camera"* to Judge Bashant, but defense counsel never saw any such documents nor did Judge Bashant ever mention receiving such documents.  In *Strojnik v. 1315 Orange Ave.,* Case No.: 3:19-cv-1991-LAB (JLB) (S.D.Cal. Oct. 5, 2021), Strojnik was again ordered to produce such "evidence," and he still has not done so.

In the evidentiary hearing in *Village 1107 Coronado*, Strojnik could not even

identify specific details about his purported "donations," such as the name of the alleged

charity, Transcript, 25:24-26:15, to whom he purportedly signed settlement checks,

Transcript, 29:1-5, 32:4-11, and he never declared these alleged "donations" to the IRS,

Transcript, 37:24-38:1. Ultimately, Strojnik chose the name "AID Foundation" as the

alleged charity. Transcript, 28:19-25. However, the IRS has only one record of a charity

by the name of AID Foundation, which is located in Worcester, MA, and which has

reported less than $50,000 in donations each year from 2016-2018, a far cry from the $1.2

million claimed by Strojnik.[1]  The Aid Foundation website, https://www.aid.foundation,

shows that it has nothing to do with assisting the disabled. Having failed to produce *any*

evidence to this Court on the alleged $1.2 million that he claims to have donated to what,

according to the IRS, is a non-existent charity, despite having made that representation to

both the *IA Napa Lodging First* and *Village 1107 Coronado* courts, the only reasonable

inference is that this is just another fabrication by which Strojnik hides his money.

E.     No Evidence Regarding How Plaintiff Finances His Home, Travel, and Personal
       Expenses.

       The *1315 Orange Ave* court also ordered Strojnik to provide "an explanation of how

Plaintiff finances his home, travel, and personal expenses." Strojnik's sole response, not

even under oath, was a cryptic "credit cards." Although evidence presented in the *Village

1107 Coronado* evidentiary hearing shows that he pays his expenses for home, travel and

personal expenses (and apparently re-stocking his rapidly diminishing wine cellar) from the

Lunar Eclipse account, merely stating "credit cards" fails to explain where the funds come

from to *pay* those credit cards each month, and Strojnik does not claim that he his credit

cards have been cancelled for lack of payment. Therefore the only reasonable conclusion is

---

[1]

https://apps.irs.gov/app/eos/detailsPage?ein=812985688&name=Aid%20Foundation%20Inc.&city=Worcester&state=MA&countryAbbr=US&dba=&type=CHARITIES,%20DETERMINATIONLETTERS,%20EPOSTCARD&orgTags=CHARITIES&orgTags=DETERMINATIONLETTERS&orgTags=EPOSTCARD

that he is paying his credit cards and is paying them from a source that he failed to disclose.

F.    Strojnik's Conduct Exemplifies The Reason That A Bond Is Required.

Strojnik apparently believes that he can file complaints anywhere, claim that he is disabled when it is clear that he is not, and fabricate allegations in the hope of saving a case or two.  His bad faith is clear.  For example, putting aside all of the judgments, the decisions, the disbarment for filing fraudulent ADA lawsuits, etc., the plain fact is that Strojnik can only get injunctive relief in this case and nothing more.  Counsel for Defendant has a $21,995 judgment lien on this case.  Strojnik could get nothing even if he could prevail.  This case is therefore the epitome of Strojnik's bad faith litigation tactics in this state and elsewhere.  But even though sanctions and disbarment do not deter him, a costs bond certainly will.

The California Civil Procedure Code permits courts to require "an undertaking to secure an award of costs and attorney's fees" from a plaintiff. *Crytek Gmbh v. Cloud Imperium Games Corp.*, 2019 U.S. Dist. LEXIS 157184 (C.D. Cal. July 22, 2019) citing Cal. Civ. Proc. Code § 1030(b). Under that statute, a defendant may move for such an undertaking when: (1) "plaintiff resides out of the state or is a foreign corporation" and (2) "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding." *Id.* A defendant does not need to show that there is "no possibility" that the plaintiff could win at trial, "but only that it [is] reasonably possible" that the defendant will win." *Crytek Gmbh v. Cloud Imperium Games Corp.*, 2019 U.S. Dist. LEXIS 157184 (C.D. Cal. July 22, 2019) at *3.  This hurdle is a "relatively low" one. *Id.* The Ninth Circuit has held that this standard is met when it would not be "illogical, implausible, or without support in the record to conclude that there [is] a reasonable possibility that [the defendant] would prevail" and be entitled to fees and costs. *Pittman v. Avish P'ship*, 525 F. App'x 591, 594 (9th Cir. 2013)  This issue has already been decided against Strojnik in both *Strojnik v. Woodside Hotel Group, Ltd*, 2021 U.S. Dist. LEXIS 24880 (N.D. Cal. Feb. 9, 2021), and *Strojnik v. Kamla Hotels, Inc.*, No. 19-cv-02212-AJB-AHG, 2021 U.S. Dist. LEXIS 144148 (S.D. Cal. July 30, 2021), where

the courts applied the *Simulent* factors to require that Strojnik post a $20,000 bond in the identical case as here, and dismissed both cases when he refused to do so.

Strojnik does not challenge anything in the Motion by admissible evidence. He does not take issue with Mr. Stillman's hourly rate, he has not taken issue with the above standards for imposing a costs bond, he has not denied having a string of unpaid judgments, tax liens and attorney's fees orders and he has not argued that the Defendant has no possibility of prevailing in this case. In other words, Strojnik has conceded that a bond is appropriate.

Thus, the only real issue before this Court is to determine how much of a bond to impose. This Court should impose the full amount requested, as the amount of the bond is not intended to be punishment but rather, a reasonable estimate of what Defendant will incur in connection with the defense of this case, assuming that the case is not dismissed before trial.

## CONCLUSION

For the foregoing reasons, Defendant requests that this Court grant its Motion and require plaintiff Peter Strojnik to post a bond in the amount of $75,000.

Respectfully Submitted,

STILLMAN & ASSOCIATES

Dated: December 2, 2021        By:_____
                                              Philip H. Stillman, Esq.
                                              Attorneys for defendant

1

**PROOF OF SERVICE**

2      I, the undersigned, certify under penalty of perjury that on December 2, 2021, or as

3   soon as possible thereafter, copies of the foregoing Reply in support of Defendant's Motion

4   for a Costs Bond, was served electronically by the Court's ECF notice to all

5   persons/entities requesting special notice or otherwise entitled to the same and via email to

6   Plaintiff's email address listed with this Court.

7                                              By: /s/ *Philip H. Stillman*
                                              Attorneys for R.F. Reichert Hotels V, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. Re Motion for Costs Bond                    -10-